UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KOREAN AIR LINES CO., LTD.,

Plaintiff,

- against -

THE PORT AUTHORITY OF NEW YORK AND NEW
JERSEY, TULLY CONSTRUCTION COMPANY, INC.,
COVENANT AVIATION SECURITY, LLC AND
KAMALL A. MCLEAN,

Defendants.

ORIGINAL

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JUN 0 1 2010 ★

BROOKLYN OFFICE

COMPLAINT

Case No.

CV 10 - 2484

TOWNES, J.
ORENSTEIN, M.J.

Plaintiff Korean Air Lines Co., Ltd. ("Plaintiff" or "KAL"), by its attorneys Nixon

Peabody LLP, as and for its Complaint herein, alleges as follows:

## NATURE OF THE ACTION

1.      This is an action to recover money damages in connection with property
damage to KAL aircraft HL7400, a Boeing 747-400, which occurred at John F. Kennedy
International Airport on June 9, 2009, as well as to recover lost profits, fees, costs and
expenses in connection with this property damage. This property damage was caused by the
conduct of defendants, including defendants' negligence, negligence per se, and breach of
contract.

## PARTIES

2.      Plaintiff is a foreign corporation with its principal place of business in Seoul,
Korea.

3.      Plaintiff is authorized to do business in the United States and the State of New
York as an air carrier.

13011943.1

4.      Defendant The Port Authority of New York and New Jersey ("Defendant Port Authority") is a bi-state transportation agency that manages *inter alia* the bridges, tunnels, bus terminals and airports in the New York metropolitan area.

5.      At all relevant times, Defendant Port Authority was and has been continuously doing business in the States of New York and New Jersey.

6.      Defendant Tully Construction Company, Inc. ("Defendant Tully") is a New York corporation with its principal place of business in Flushing, New York.

7.      Upon information and belief, Defendant Tully is in the business of *inter alia* performing construction work at John F. Kennedy International Airport in Flushing, New York ("JFK International Airport").

8.      Defendant Covenant Aviation Security, LLC ("Defendant Covenant") is an Illinois limited liability corporation, and upon information and belief, with a principal place of business in Winter Springs, Florida.

9.      Upon information and belief Defendant Covenant is in the business of *inter alia*, providing airport security services.

10.     Defendant Kamall A. McLean ("Defendant McLean") is an individual who resides in Mount Vernon, New York.

11.     Defendant McLean was  an employee of Defendant Tully as of June 9, 2009.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the citizenship of the parties is diverse and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

- 2 -

13.     This Court has *in personam* jurisdiction over defendants pursuant to New York Civil Practice Law and Rules sections 301 and 302.  Defendants conduct business in the State of New York in connection with the provision of services for common carriers, airport operations, airport safety and airport construction.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), and 65 McKinney's Cons. Laws of NY § 7106.

### FACTS COMMON TO ALL CLAIMS

15.     On June 9, 2010, KAL aircraft HL7400, a Boeing 747-400 traveling from Seoul, Korea via Anchorage, Alaska bearing flight number 257 (the "Subject Aircraft") was provided clearance to land and did land on Runway 4R of JFK International Airport.

16.     Following landing, the Subject Aircraft was directed to exit runway 4R at Taxiway E, and to proceed to Taxiway Y by, upon information and belief, the Federal Aviation Administration (the "FAA") and/or Defendant Port Authority.

17.     While the Subject Aircraft was taxiing on Taxiway Y as directed, the Subject Aircraft's number four engine struck a truck owned and operated by Defendant Tully causing extensive damage to the Subject Aircraft and its number four engine ("the Accident").

18.     During the time leading up to the Accident, the Subject Aircraft was authorized and directed to taxi on Taxiway Y, and the Subject Aircraft was traveling on Taxiway Y as directed.

19.     Defendant Tully was hired by and contracted with Defendant Port Authority to perform construction work at or around the vicinity of Taxiway Y.

20.     Upon information and belief, Defendant Tully was authorized by Defendant Port Authority to park Defendant Tully's truck, a 1997 Green Ford Truck bearing New York

- 3 -

license plate no. 10656PB Commercial (the "Tully Truck"), approximately sixty-eight feet from the centerline of Taxiway Y.

21. The Tully Truck encroached into the aircraft operating area of Taxiway Y at the specific time and location of the Accident.

22. The Tully Truck encroached inside the Object Free Area at the specific time and location of the Accident.

23. At all times relevant, the Tully Truck was operated and controlled by Defendant McLean. In particular, Defendant McLean was operating and controlling the Tully Truck at the time of the Accident.

24. At all times relevant, Defendant Covenant was hired by and contracted with Defendant Port Authority to provide security services at or around the vicinity of Taxiway Y where the Accident occurred.

25. Upon information and belief, at all times relevant Defendant Covenant was hired by Defendant Port Authority to ensure the safety of construction sites at JFK International Airport, which included the location of the Accident.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT PORT AUTHORITY
### (Breach of Contract)

26. KAL repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs number "1" through "25" with the same force and effect as if more fully set forth at length herein.

27. At all times relevant, several written agreements have been and continue to be in full force and effect as between KAL and Defendant Port Authority with regard to, among other things, the use, occupancy, right of passage, operation and related fees in connection

-4-

with certain runways, taxiways, building spaces and landing areas at JFK International Airport.

28.     These agreements include a written agreement No. AYC-646 titled "Agreement of Lease", which was executed on or about February 12, 1997 by and between KAL and Defendant Port Authority.

29.     Pursuant to the Agreement of Lease, Section 1, KAL, as lessee, agreed to lease from Defendant Port Authority, as lessor, certain property located at JFK International Airport including:

> ground space of 21.3099 acres . . . together with Building No. 9, Building No. 9A, and Building No. 93, . . . and all other buildings, structures, fixtures, improvements, facilities and other property of the Port Authority located therein, thereon or thereunder, and all buildings, structures, additions, fixtures, improvements, and facilities located, constructed or installed, or which may be located, constructed or installed therein, thereon or thereunder, and all easements and other rights appurtenant thereto and granted by this Lease, all of the foregoing being hereinafter collectively referred to as "the premises."

30.     In addition, under the terms of the Agreement of Lease, Section 7:

> The Lessee [KAL] shall have the right of ingress and egress between the premises and the Public Landing Area at the [JFK International] Airport by means of existing taxiways . . . .

31.     Under the terms of the Agreement of Lease, Section 4, "The term of the letting hereunder shall commence on February 12, 1997 . . . and, unless sooner terminated, the terms of the letting shall expire on December 30, 2015."

32.     The Agreement of Lease by and between KAL and Defendant Port Authority was in full force and effect at the time of the Accident and remains in full force and effect.

33.     The location of the Accident was on property which was the subject of the Agreement of Lease.

13011943.1

34. In particular, under the Agreement of Lease, Defendant Port Authority was obligated to ensure, among other things, safe passage, ingress and egress through Taxiway Y and the location where the Accident occurred.

35. Defendant Port Authority failed to secure the safe passage, ingress and egress through Taxiway Y as it was obligated to do under the Agreement of Lease.

36. Defendant Port Authority's willful direction to Defendant Tully to engage in construction operations at or adjacent to Taxiway Y in the location where KAL was directed to taxi the Subject Aircraft was the sole and direct cause leading to the Accident and damages sustained by Plaintiff.

37. Defendant Port Authority's failure to secure the safe passage, ingress and egress of the Subject Aircraft was a material breach of those agreements between KAL and Defendant Port Authority that entitled KAL to the use, occupancy, right of passage, operation and related fees, including the Agreement of Lease.

38. The breaches of the Agreements by Defendant Port Authority was the cause in fact and legal cause of the Accident and damages sustained by Plaintiff.

39. KAL performed all conditions precedent, covenants, and promises in accordance with the terms and conditions of the parties' agreements including the Agreement of Lease.

40. By reason of the foregoing, KAL has been damaged in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft, and business interruption, together with interest and costs.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT PORT AUTHORITY

- 6 -

13011943.1

**(Negligence)**

41.    KAL repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "40", with the same force and effect as if more fully set forth at length herein.

42.    Defendant Port Authority directed, authorized, permitted and/or did not prevent Defendant Tully to engage in construction operations at the same location where the Subject Aircraft was directed to taxi on June 9, 2009 at JFK International Airport.

43.    Defendant Port Authority directed Defendant Tully to place the Tully Truck at a location which encroached inside the Object Free Area of Taxiway Y on June 9, 2009 at JFK International Airport.

44.    Defendant Port Authority directed Defendant Tully to place the Tully Truck at the same location where the Subject Aircraft was directed to taxi on June 9, 2009 at JFK International Airport.

45.    Defendant Port Authority knew or should have known that Defendant Tully would be using vehicles in the vicinity of Taxiway Y at or around the time of the Accident.

46.    Defendant Port Authority knew or should have known that Defendant Tully was operating the Tully Truck at a location which encroached inside the Object Free Area of Taxiway Y at or around the time of the Accident.

47.    Defendant Port Authority failed to advise and/or notify Defendant Tully that Taxiway Y was open for aircraft traffic and taxiing activities at or around the time of the Accident.

48.    Defendant Port Authority's sole and willful act of directing authorizing, permitting and not preventing Defendant Tully to engage in construction operations and to

- 7 -

place the Tully Truck at the same location where the Subject Aircraft was directed to taxi on or about June 9, 2009 at 12:30 a.m. was the sole cause of the collision involving the Subject Aircraft and the damages claimed herein.

49.     Accordingly, Defendant Port Authority negligently performed its duties in connection with the use of Taxiway Y, and its failure to coordinate activities of Defendant Tully with the JFK International Airport control tower which resulted in the Accident.

50.     Defendant Port Authority also failed to provide KAL with proper instructions and/or information regarding the taxi route KAL was directed to take to avoid collision with the Tully Truck.

51.     The foregoing acts and omissions of Defendant Port Authority proximately caused the Accident and the damages sustained by KAL.

52.     By reason of the foregoing, KAL has been damaged in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with interest and costs.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT PORT AUTHORITY
### (Gross Negligence)

53.     KAL repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "52", with the same force and effect as if more fully set forth at length herein.

54.     Defendant Port Authority voluntarily and deliberately directed Defendant Tully to engage in construction operations at the same location where the Subject Aircraft was directed to taxi on June 9, 2009 at JFK International Airport.

55.     Defendant Port Authority voluntarily and deliberately directed, authorized and permitted Defendant Tully to place the Tully Truck at a location which encroached inside the Object Free Area of Taxiway Y on June 9, 2009 at JFK International Airport.

56.     Defendant Port Authority voluntarily and deliberately directed, authorized and permitted Defendant Tully to place the Tully Truck at the same location where the Subject Aircraft was directed to taxi on June 9, 2009 at JFK International Airport.

57.     Defendant Port Authority failed to provide the FAA central tower and/or KAL with instructions and information regarding the location of the Tully Truck in order to avoid collision with the Tully Truck.

58.     Defendant Port Authority failed to advise and/or notify Defendant Tully that Taxiway Y was open for aircraft traffic and taxiing activities at or around the time of the Accident.

59.     Defendant Port Authority's sole and willful acts of directing Defendant Tully to engage in construction operations and to place the Tully Truck at the same location where the Subject Aircraft was directed to taxi on or about June 9, 2009 at 12:30 a.m., and its failure to advise and/or notify Defendant Tully that Taxiway Y was open on or about June 9, 2009 at 12:30 a.m., was the sole cause of the collision involving the Subject Aircraft and the damages claimed herein.

60.     Accordingly, Defendant Port Authority was grossly negligent and careless in its duties in connection with the use of Taxiway Y, and demonstrated deliberate indifference with regard to its failure to coordinate activities of Defendant Tully with the JFK International Airport control tower, all of which caused the Accident.

-9-

61. The foregoing acts and omissions of Defendant Port Authority proximately caused the damages sustained by KAL.

62. By reason of the foregoing, KAL has been damaged in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with punitive damages, interest and costs.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT PORT AUTHORITY
#### (Negligence Per Se)

63. KAL repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "62", with the same force and effect as if more fully set forth at length herein.

64. Defendant Port Authority directed Defendant Tully to engage in construction operations at the same location where the Subject Aircraft was directed to taxi on June 9, 2009 at JFK International Airport.

65. Defendant Port Authority failed to direct and/or cause an unserviceability marker to be displayed on the portion of Taxiway Y which was encroached by the Tully Truck as Defendant Port Authority was required pursuant to the regulations promulgated by the International Civil Aviation Organization ("ICAO").

66. In particular, ICAO Annex 14, Vol. 1, Section 7.4, specifies in relevant portion:

> Unserviceability marker shall be displayed wherever any portion of a taxiway, apron or holding bay is unfit for the movement of aircraft but it is still possible for aircraft to bypass the area safely. On a movement area used at night, unserviceability lights shall be used.

13011943.1

67.     In addition, ICAO Annex 14, Vol. 1, Section 7.3 states in relevant portion:

> Unserviceability lights shall consist of a red fixed light. The light shall have an intensity sufficient to ensure conspicuity considering the intensity of the adjacent lights and the general level of illumination against which it would normally be viewed. In no case shall the intensity be less than 10 cd of red light.

68.     Defendant Port Authority also failed to provide KAL with instructions and information regarding the taxi route KAL was directed to take to avoid collision with the Tully Truck as Defendant Port Authority was required to do pursuant to the regulations promulgated by the ICAO.

69.     In particular, ICAO Doc. 4444, ATM/501, Section 7.6.3.1 specifies in relevant portion:

> Prior to issuing a taxi clearance, the controller shall determine where the aircraft concerned is parked. Taxi clearance shall contain concise instruction and adequate information so as to assist the flight crew to follow the correct taxi route, to avoid collision with other aircraft or objects and to minimize the potential for the aircraft or objects and to minimize the potential for the aircraft inadvertently entering an active runway.

70.     Defendant's failure to provide KAL with proper instructions relative to the taxi route KAL was directed to take further violates Airport Rules and Regulations of The Port Authority of New York and New Jersey (the "Airport Rules and Regulations"), Section VIII, paragraph U.1 which states in relevant portion:

> Aircraft shall not be positioned, started or taxied so that propeller slipstream, jet engine exhaust blast or rotor down-wash may cause injury to persons, or damage to property. . .

71.     In addition, Defendant Port Authority wrongfully authorized and permitted Defendant Tully to operate the Tully Truck in a manner which created an unreasonable risk

- 11 -

of harm to persons or property at or around the time of the Accident in violation of the Airport Rules and Regulations.

72.     Defendant Port Authority directed Defendant Tully to place the Tully Truck at the same location where the Subject Aircraft was directed to taxi on June 9, 2009 at JFK International Airport in violation of the Airport Rules and Regulations, Section C, paragraph 6 which specifies in relevant portion that "No vehicle shall be operated in a manner which creates an unreasonable risk of harm to persons or property . . ."

73.     Defendant Port Authority authorized and permitted Defendant Tully to operate the Tully Truck without operating and/or being equipped with a functional beacon light at or around the time of the Accident in violation of Section VI, paragraph C.14 of the Airport Rules and Regulations which states in relevant portion:

> All vehicles operating in these areas [runway, taxiway and safety area] . . . shall have an operating rotation amber light located at the highest structure of the vehicle turned "on" between the hours of sunset and sunrise and during periods of rain, snow, fog, and other conditions.

74.     Accordingly, Defendant Port Authority negligently performed its duties in connection with the use of Taxiway Y, and violated, among other standards and regulations, the Airport Rules and Regulations and the regulations of the ICAO, all of which resulted in the collision involving the Subject Aircraft on June 9, 2009.

75.     The foregoing acts and omissions of Defendant Port Authority proximately caused the damages sustained by KAL.

76.     By reason of the foregoing, KAL has been damaged in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property,

diminution in value of the Subject Aircraft and business interruption, together with interest and costs.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANT TULLY
### (Negligence)

77.     KAL repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "76", with the same force and effect as if more fully set forth at length herein.

78.     At all times relevant, Defendant Tully owned and operated the Tully Truck.

79.     At all times relevant, Defendant Tully was responsible for the maintenance and operation of the Tully Truck.

80.     At all times relevant, Defendant Tully engaged in construction operations in various locations at JFK International Airport, including the location on or adjacent to Taxiway Y.

81.     Defendant Tully knew or should have known that Taxiway Y was open to aircraft traffic and taxiing activities at or around the time of the Accident.

82.     At or around the time of the Accident, Defendant Tully was engaged in construction operations which encroached upon Taxiway Y and its Object Free Area.

83.     At or around the time of the Accident, Defendant Tully directed and/or authorized Defendant McLean, an employee of Defendant Tully, to park the Tully Truck in a location such that it encroached inside the Object Free Area of Taxiway Y.

84.     Defendant Tully knew or should have known that the Tully Truck was parked in a location which encroached inside the Object Free Area of Taxiway Y on or about June 9, 2009 at 12:30 a.m.

- 13 -

85.     Defendant Tully knew or should have known that the Tully Truck was parked at the same location where the Subject Aircraft was directed to taxi on or about June 9, 2009 at 12:30 a.m.

86.     At or around the time of the Accident, Defendant Tully failed to notify or otherwise advise the FAA, Defendant Port Authority or KAL that it was engaged in construction operations which encroached upon Taxiway Y and its Object Free Area.

87.     At or around the time of the Accident, Defendant Tully operated the Tully Truck in a manner which created an unreasonable risk of harm to persons or property.

88.     In particular, Defendant Tully operated the Tully Truck without an operating and/or properly maintained beacon light at or around the time of the Accident.

89.     Defendant Tully also failed to turn on the headlights or any other light of the Tully Truck at or around the time of the Accident.

90.     Defendant Tully knew or should have known that the Tully Truck was being operated without a beacon light, head lights or any other of the truck's lights.

91.     On June 9, 2009 at or around the time of the Accident Defendant Tully failed to employ the necessary unserviceability markers on the portion of Taxiway Y which Defendant Tully and the Tully Truck encroached.

92.     Defendant Tully failed to cease and/or move its construction operations such that they did not encroach upon Taxiway Y.

93.     Defendant Tully hired Defendant McLean to operate the Tully Truck.

94.     On June 9, 2009, Defendant McLean was acting in the course and scope of his employment with Defendant Tully.

-14-

95.   On June 9, 2009 at or around the time of the Accident, Defendant McLean was acting in the course and scope of his employment with Defendant Tully.

96.   Defendant Tully failed to train, supervise and require Defendant McLean to comply with Port Authority regulations concerning the use of lights on vehicles parked at or around taxiways, the use of the lights in the Tully Truck, the proper placement of the Tully Truck and other requirements of his employment.

97.   Defendant Tully failed to move the Tully Truck such that it did not encroach upon Taxiway Y.

98.   Defendant Tully's conduct, which included its encroachment of construction operations onto Taxiway Y, the parking of the Tully Truck which encroached upon Taxiway Y at its Object Free Area, the failure to advise and/or notify the FAA, Defendant Port Authority or KAL of its construction operations and the Tully Truck which encroached upon Taxiway Y, negligent hiring, training and supervising of Defendant McLean and failure to utilize requisite lighting, resulted in the collision between the Tully Truck and the Subject Aircraft on June 9, 2009, at approximately 12:30 a.m.

99.   The foregoing acts and omissions of Defendant Tully proximately caused the damages sustained by KAL.

100.   By reason of the foregoing, KAL has been damaged in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with interest and costs.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANT TULLY
**(Gross Negligence)**

13011943.1

101.   KAL repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "100", with the same force and effect as if more fully set forth at length herein.

102.   At all times relevant, Defendant Tully owned and operated the Tully Truck.

103.   At all times relevant, Defendant Tully was responsible for the maintenance and operation of the Tully Truck.

104.   At all times relevant, Defendant Tully engaged in construction operations in various locations at JFK International Airport, including the location on or adjacent to Taxiway Y.

105.   Defendant Tully knew or should have known that Taxiway Y was open to aircraft traffic and taxiing activities at or around the time of the Accident.

106.   At or around the time of the Accident, Defendant Tully was engaged in construction operations which encroached upon Taxiway Y and its Object Free Area.

107.   At or around the time of the Accident, Defendant Tully directed and/or authorized Defendant McLean, an employee of Defendant Tully, to park the Tully Truck in a location such that it encroached inside the Object Free Area of Taxiway Y.

108.   Defendant Tully knew or should have known that the Tully Truck was parked in a location which encroached inside the Object Free Area of Taxiway Y on or about June 9, 2009 at 12:30 a.m.

109.   Defendant Tully knew or should have known that the Tully Truck was parked at the same location where the Subject Aircraft was directed to taxi on or about June 9, 2009 at 12:30 a.m.

13011943.1

110. At or around the time of the Accident, Defendant Tully failed to notify or otherwise advise the FAA, Defendant Port Authority or KAL that it was engaged in construction operations which encroached upon Taxiway Y and its Object Free Area.

111. At or around the time of the Accident, Defendant Tully operated the Tully Truck in a manner which created an unreasonable risk of harm to persons or property.

112. In particular, Defendant Tully operated the Tully Truck without an operating and/or properly maintained beacon light at or around the time of the Accident.

113. Defendant Tully also failed to turn on the headlights or any other light of the Tully Truck at or around the time of the Accident.

114. Defendant Tully knew or should have known that the Tully Truck was being operated without an beacon light, head lights or any other of the truck's lights.

115. On June 9, 2009 at or around the time of the Accident Defendant Tully failed to employ the necessary unserviceability markers on the portion of Taxiway Y which Defendant Tully and the Tully Truck encroached.

116. Defendant Tully failed to cease and/or move its construction operations such that they did not encroach upon Taxiway Y.

117. Defendant Tully hired Defendant McLean to operate the Tully Truck.

118. On June 9, 2009 at or around the time of the Accident, Defendant McLean was acting in the course and scope of his employment with Defendant Tully.

119. On June 9, 2009 at or around the time of the Accident, Defendant McLean was acting in the course and scope of his employment with Defendant Tully.

120. Defendant Tully failed to train, supervise and require Defendant McLean to comply with Port Authority regulations concerning the use of lights on vehicles parked at or

- 17 -

around taxiways, the use of the lights in the Tully Truck, the proper placement of the Tully Truck and other requirements of his employment.

121.    Defendant Tully failed to move the Tully Truck such that it did not encroach upon Taxiway Y.

122.    Defendant Tully's conduct, which included its encroachment of construction operations onto Taxiway Y, the parking of the Tully Truck which encroached upon Taxiway Y at its Object Free Area, the failure to advise and/or notify the FAA, Defendant Port Authority or KAL of its construction operations and the Tully Truck which encroached upon Taxiway Y, negligent hiring, training and supervising of Defendant McLean and failure to utilize an unserviceability marker, resulted in the collision between the Tully Truck and the Subject Aircraft on June 9, 2009, at approximately 12:30 a.m.

123.    Defendant Tully was grossly negligent, careless and demonstrated deliberate indifference with regard to its duties in connection with its encroachment of construction operations onto Taxiway Y, the parking of the Tully Truck which encroached upon Taxiway Y at its Object Free Area, the failure to advise and/or notify the FAA, Defendant Port Authority or KAL of its construction operations and the Tully Truck which encroached upon Taxiway Y, negligent hiring, training and supervising of Defendant McLean and failure to utilize an unserviceability marker, which resulted in the collision involving the Subject Aircraft on June 9, 2009.

124.    The foregoing acts and omissions of Defendant Tully proximately caused the damages sustained by KAL.

125.    By reason of the foregoing, KAL has been damaged in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property,

- 18 -

diminution in value of the Subject Aircraft and business interruption, together with punitive damages, interest and costs.

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANT TULLY
### (Negligence Per Se)

126. KAL repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "125", with the same force and effect as if more fully set forth at length herein.

127. Defendant Tully engaged in construction operations, which included the operation of the Tully Truck, in an unsafe manner which created unreasonable risk of harm to persons and property at the same location where the Subject Aircraft was directed to taxi on June 9, 2009 at JFK International Airport.

128. Defendant Tully's operation of the Tully Truck violated the Airport Rules and Regulations including but not limited to Section VII, paragraphs C.6 and C.15 which state in relevant portion:

> 6. No vehicle shall be operated in a manner which creates an unreasonable risk of harm to persons or property . . . or otherwise affects the ability of the driver to safely operate the vehicle...

> 15. (a) No person shall park a vehicle or permit a vehicle to remain stopped within the Airport except in such areas and for such periods of time as may be prescribed by the Manager.
> (b) No person shall park or permit a vehicle to remain stopped contrary to authorized signs, pavement markings or other traffic control devices.

129. In addition, Defendant Tully operated the Tully Truck without operating and/or being equipped with a functional beacon light at or around the time of the Accident in violation of Section VI, paragraph C.14 f the Airport Rules and Regulations which states in relevant portion:

13011943.1

All vehicles operating in these areas [runway, taxiway and safety area] . . . shall have an operating rotation amber light located at the highest structure of the vehicle turned "on" between the hours of sunset and sunrise and during periods of rain, snow, fog, and other conditions.

130.    Defendant Tully operated the Tully Truck at the same location on Taxiway Y where the Subject Aircraft was directed to taxi on June 9, 2009 at JFK International Airport.

131.    Defendant Tully failed to yield and give right of way to the Subject Aircraft on June 9, 2009 at or around 12:30 a.m. in violation of Section VI, paragraph C.13 of the Airport Rules and Regulations which states in relevant portion that "Vehicles shall yield and give the right of way to all aircraft in motion."

132.    Accordingly, Defendant Tully negligently performed its duties in connection with its construction operations, which included the operation of the Tully Truck which violated, among other standards and regulations, the Airport Rules and Regulations, all of which resulted in the collision involving the Subject Aircraft on June 9, 2009.

133.    The foregoing acts and omissions of Defendant Tully proximately caused the damages sustained by KAL.

134.    By reason of the foregoing, KAL has been damaged in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with interest and costs.

### AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST DEFENDANT COVENANT
### (Negligence)

13011943.1

135.   KAL repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "134", with the same force and effect as if more fully set forth at length herein.

136.   At all times relevant, Defendant Covenant was responsible for providing security services at or around the vicinity of Taxiway Y at JFK International Airport where the Accident occurred.

137.   Upon information and belief, at all times relevant Defendant Covenant was hired by Defendant Port Authority to ensure the safety of construction sites at JFK International Airport, which included the location where the Accident occurred.

138.   Defendant Covenant's duty to ensure the safety of construction sites at JFK International Airport included the duty to ensure the safety of aircraft and their personnel.

139.   On June 9, 2009 at around 12:30 a.m., Defendant Covenant did employ several security guards who were stationed at or around the location where the Accident occurred.

140.   Defendant Covenant knew or should have known that the Tully Truck was parked in a location which encroached upon Taxiway Y and its Object Free Area at or around the time of the Accident.

141.   Defendant Covenant knew or should have known that Taxiway Y was open to aircraft traffic and taxiing activities at or around the time of the Accident.

142.   At or around the time of the Accident, Defendant Covenant and its employed security guards failed to notify and advise Defendant Tully that Taxiway Y was open to aircraft traffic and taxiing activities.

13011943.1

143.    At or around the time of the Accident, Defendant Covenant and its employed security guards failed to direct Defendant Tully to move the Tully Truck to a location such that it would no longer encroach upon Taxiway Y prior to the collision involving the Subject Aircraft.

144.    At or around the time of the Accident, Defendant Covenant and its employed security guards failed to advise KAL that the Tully Truck was parked in a location that encroached upon Taxiway Y.

145.    At or around the time of the Accident, Defendant Covenant and its employed security guards failed to direct Defendant Tully to engage the Tully Truck's beacon light, head lights or any other of the truck's lights.

146.    At or around the time of the Accident, Defendant Covenant and its employed security guards failed to direct Defendant Tully to employ the necessary unserviceability markers on the portion of Taxiway Y which Defendant Tully and the Tully Truck encroached.

147.    Defendant Covenant failed to train, supervise and require its employed security guards who were stationed at or around the location where the Accident occurred to comply with Port Authority regulations concerning, taxiway safety, the use of lights on vehicles parked at or around taxiways, the use of the lights in the Tully Truck, the proper placement of the Tully Truck and other requirements of their employment.

148.    Defendant Covenant's conduct resulted in the collision between the Tully Truck and the Subject Aircraft on June 9, 2009 at or around 12:30 a.m.

149.    The foregoing acts and omissions of Defendant Covenant proximately caused the damages sustained by KAL.

- 22 -

150.    By reason of the foregoing, KAL has been damaged in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with interest and costs.

## AS AND FOR A NINTH CAUSE OF ACTION AGAINST DEFENDANT COVENANT
### (Gross Negligence)

151.    KAL repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "150", with the same force and effect as if more fully set forth at length herein.

152.    At all times relevant, Defendant Covenant was responsible for providing security services at or around the vicinity of Taxiway Y at JFK International Airport where the Accident occurred.

153.    Upon information and belief, at all times relevant Defendant Covenant was hired by Defendant Port Authority to ensure the safety of construction sites at JFK International Airport, which included the location where the Accident occurred.

154.    Defendant Covenant's duty to ensure the safety of construction sites at JFK International Airport included the duty to ensure the safety of aircraft and their personnel.

155.    On June 9, 2009 at around 12:30 a.m., Defendant Covenant did employ several security guards who were stationed at or around the location where the Accident occurred.

156.    Defendant Covenant knew or should have known that the Tully Truck was parked in a location which wrongfully encroached upon Taxiway Y and its Object Free Area at or around the time of the Accident.

13011943.1

157.   Defendant Covenant knew or should have known that Taxiway Y was open to aircraft traffic and taxiing activities at or around the time of the Accident.

158.   At or around the time of the Accident, Defendant Covenant and its employed security guards failed to notify and advise Defendant Tully that Taxiway Y was open to aircraft traffic and taxiing activities.

159.   At or around the time of the Accident, Defendant Covenant and its employed security guards failed to direct Defendant Tully to move the Tully Truck to a location such that it would no longer encroach upon Taxiway Y prior to the collision involving the Subject Aircraft.

160.   At or around the time of the Accident, Defendant Covenant and its employed security guards failed to advise KAL that the Tully Truck was parked in a location that encroached upon Taxiway Y.

161.   At or around the time of the Accident, Defendant Covenant and its employed security guards failed to direct Defendant Tully to engage the Tully Truck's beacon light, head lights or any other of the truck's lights.

162.   At or around the time of the Accident, Defendant Covenant and its employed security guards failed to direct Defendant Tully to employ the necessary unserviceability markers on the portion of Taxiway Y which Defendant Tully and the Tully Truck encroached.

163.   Defendant Covenant failed to train, supervise and require its employed security guards who were stationed at or around the location where the Accident occurred to comply with Port Authority regulations concerning, taxiway safety, the use of lights on

- 24 -

vehicles parked at or around taxiways, the use of the lights in the Tully Truck, the proper placement of the Tully Truck and other requirements of their employment.

164. Defendant Covenant's conduct resulted in the collision between the Tully Truck and the Subject Aircraft on June 9, 2009 at or around 12:30 a.m.

165. Accordingly, Defendant Covenant was grossly negligent, careless and demonstrated deliberate indifference with regard to its duties in connection with its failure to ensure the safety of the location at JFK International Airport where Accident occurred on June 9, 2009 at approximately 12:30 a.m.

166. The foregoing acts and omissions of Defendant Covenant proximately caused the damages sustained by KAL.

167. By reason of the foregoing, KAL has been damaged in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with punitive damages, interest and costs.

## AS AND FOR A TENTH CAUSE OF ACTION AGAINST DEFENDANT COVENANT
### (Negligence Per Se)

168. KAL repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "167", with the same force and effect as if more fully set forth at length herein.

169. At all times relevant, Defendant Covenant was responsible for providing security services at or around the vicinity of Taxiway Y at JFK International Airport where the Accident occurred.

170.    Upon information and belief, at all times relevant Defendant Covenant was hired by Defendant Port Authority to ensure the safety of construction sites at JFK International Airport, which included the location where the Accident occurred.

171.    Defendant Covenant's duty to ensure the safety of construction sites at JFK International Airport included the duty to ensure the safety of aircraft and their personnel.

172.    Defendant Covenant wrongfully authorized and permitted Defendant Tully to operate the Tully Truck in a manner which created an unreasonable risk of harm to persons or property at or around the time of the Accident in violation of the Airport Rules and Regulations.

173.    Defendant Covenant authorized and permitted Defendant Tully to place the Tully Truck at the same location where the Subject Aircraft was directed to taxi on June 9, 2009 at JFK International Airport in violation of the Airport Rules and Regulations, Section C, paragraph 6 which specifies in relevant portion that "No vehicle shall be operated in a manner which creates an unreasonable risk of harm to persons or property . . ."

174.    Defendant Covenant authorized and permitted Defendant Tully to operate the Tully Truck without operating and/or being equipped with a functional beacon light at or around the time of the Accident in violation of Section VI, paragraph C.14 of the Airport Rules and Regulations which states in relevant portion:

> All vehicles operating in these areas [runway, taxiway and safety area] . . . shall have an operating rotation amber light located at the highest structure of the vehicle turned "on" between the hours of sunset and sunrise and during periods of rain, snow, fog, and other conditions.

175.    Accordingly, Defendant Covenant negligently performed its duties in connection with the performance of the security services Defendant Covenant had a duty to

- 26 -

13011943.1

perform, and violated, among other standards and regulations, the Airport Rules and Regulations, all of which resulted in and/or contributed to the collision involving the Subject Aircraft on June 9, 2009.

176.   The foregoing acts and omissions of Defendant Covenant proximately caused the damages sustained by KAL.

177.   By reason of the foregoing, KAL has been damaged in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with interest and costs.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION AGAINST DEFENDANT McLEAN
### (Negligence)

178.   KAL repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "177", with the same force and effect as if more fully set forth at length herein.

179.   At all times relevant, Defendant McLean engaged in construction operations in the course and scope of his employment with Defendant Tully at various locations at JFK International Airport, including the location on or adjacent to Taxiway Y .

180.   Defendant McLean knew or should have known that Taxiway Y was open to aircraft traffic and taxiing activities at or around the time of the Accident.

181.   At or around the time of the Accident, Defendant McLean was engaged in construction operations which encroached upon Taxiway Y and its Object Free Area.

182.   At or around the time of the Accident, Defendant McLean did park the Tully Truck in a location such that it encroached inside the Object Free Area of Taxiway Y.

183.    Defendant McLean knew or should have known that the Tully Truck was parked in a location which encroached inside the Object Free Area of Taxiway Y on or about June 9, 2009 at 12:30 a.m.

184.    Defendant McLean knew or should have known that the Tully Truck was parked at the same location where the Subject Aircraft was directed to taxi on or about June 9, 2009 at 12:30 a.m.

185.    At or around the time of the Accident, Defendant McLean failed to notify or otherwise advise the FAA, Defendant Port Authority or KAL that he was engaged in construction operations which encroached upon Taxiway Y and its Object Free Area.

186.    At or around the time of the Accident, Defendant McLean operated the Tully Truck in a manner which created an unreasonable risk of harm to persons or property.

187.    In particular, Defendant McLean operated the Tully Truck without an operating and/or properly maintained beacon light at or around the time of the Accident.

188.    Defendant McLean also failed to turn on the headlights or any other light of the Tully Truck at or around the time of the Accident.

189.    Defendant McLean knew or should have known that the Tully Truck was being operated without an beacon light, head lights or any other of the truck's lights.

190.    On June 9, 2009 at or around the time of the Accident Defendant McLean failed to employ the necessary unserviceability markers on the portion of Taxiway Y which Defendant Tully and the Tully Truck encroached.

191.    Defendant McLean failed to cease and/or move construction operations such that they did not encroach upon Taxiway Y.

- 28 -

13011943.1

192.   Defendant McLean failed to move the Tully Truck such that it did not encroach upon Taxiway Y.

193.   At or around the time of the Accident, Defendant McLean failed to yield to and avoid the Subject Aircraft notwithstanding having knowledge and visual site of the location of the Subject Aircraft and that a collision was imminent.

194.   Defendant McLean's conduct, which included its encroachment of construction operations onto Taxiway Y, the parking of the Tully Truck which encroached upon Taxiway Y at its Object Free Area, the failure to advise and/or notify the FAA, Defendant Port Authority or KAL of his construction operations and the Tully Truck which encroached upon Taxiway Y, failure to utilize beacon lights, failure to utilize an unserviceability marker and failure to yield to and avoid the Subject Aircraft, resulted in the collision between the Tully Truck and the Subject Aircraft on June 9, 2009, at approximately 12:30 a.m.

195.   The foregoing acts and omissions of Defendant McLean proximately caused the damages sustained by KAL.

196.   By reason of the foregoing, KAL has been damaged in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with interest and costs.

13011943.1

## AS AND FOR A TWELFTH CAUSE OF ACTION AGAINST DEFENDANT MCLEAN
### (Gross Negligence)

197.　KAL repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "196", with the same force and effect as if more fully set forth at length herein.

198.　At all times relevant, Defendant McLean engaged in construction operations in the course and scope of his employment with Defendant Tully at various locations at JFK International Airport, including the location on or adjacent to Taxiway Y .

199.　Defendant McLean knew or should have known that Taxiway Y was open to aircraft traffic and taxiing activities at or around the time of the Accident.

200.　At or around the time of the Accident, Defendant McLean was engaged in construction operations which encroached upon Taxiway Y and its Object Free Area.

201.　At or around the time of the Accident, Defendant McLean did park the Tully Truck in a location such that it encroached inside the Object Free Area of Taxiway Y.

202.　Defendant McLean knew or should have known that the Tully Truck was parked in a location which encroached inside the Object Free Area of Taxiway Y on or about June 9, 2009 at 12:30 a.m.

203.　Defendant McLean knew or should have known that the Tully Truck was parked at the same location where the Subject Aircraft was directed to taxi on or about June 9, 2009 at 12:30 a.m.

204.　At or around the time of the Accident, Defendant McLean failed to notify or otherwise advise the FAA, Defendant Port Authority or KAL that he was engaged in construction operations which encroached upon Taxiway Y and its Object Free Area.

205.    At or around the time of the Accident, Defendant McLean operated the Tully Truck in a manner which created an unreasonable risk of harm to persons or property.

206.    In particular, Defendant McLean operated the Tully Truck without an operating and/or properly maintained beacon light at or around the time of the Accident.

207.    Defendant McLean also failed to turn on the headlights or any other light of the Tully Truck at or around the time of the Accident.

208.    Defendant McLean knew or should have known that the Tully Truck was being operated without an beacon light, head lights or any other of the truck's lights.

209.    On June 9, 2009 at or around the time of the Accident Defendant McLean failed to employ the necessary unserviceability markers on the portion of Taxiway Y which Defendant Tully and the Tully Truck encroached.

210.    Defendant McLean failed to cease and/or move its construction operations such that they did not encroach upon Taxiway Y.

211.    Defendant McLean failed to move the Tully Truck such that it did not encroach upon Taxiway Y.

212.    At or around the time of the Accident, Defendant McLean failed to yield to and avoid the Subject Aircraft notwithstanding having knowledge and visual site of the location of the Subject Aircraft and that a collision was imminent.

213.    Defendant McLean's conduct, which included encroachment of construction operations onto Taxiway Y, the parking of the Tully Truck which encroached upon Taxiway Y at its Object Free Area, the failure to advise and/or notify the FAA, Defendant Port Authority or KAL of construction operations and the Tully Truck which encroached upon Taxiway Y, failure to utilize beacon lights, failure to utilize an unserviceability marker and

- 31 -

failure to yield to and avoid the Subject Aircraft, resulted in the collision between the Tully Truck and the Subject Aircraft on June 9, 2009, at approximately 12:30 a.m.

214. Accordingly, Defendant McLean was grossly negligent, careless and demonstrated deliberate indifference with regard to his duties in connection with the encroachment of construction operations onto Taxiway Y, the parking of the Tully Truck which encroached upon Taxiway Y at its Object Free Area, the failure to advise and/or notify the FAA, Defendant Port Authority or KAL of construction operations and the Tully Truck which encroached upon Taxiway Y, failure to utilize beacon lights, failure to utilize an unserviceability marker and failure to yield to and avoid the Subject Aircraft, which resulted in the collision involving the Subject Aircraft on June 9, 2009.

215. The foregoing acts and omissions of Defendant McLean proximately caused the damages sustained by KAL.

216. By reason of the foregoing, KAL has been damaged in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with punitive damages, interest and costs.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION AGAINST DEFENDANT McLEAN
#### (Negligence Per Se)

217. KAL repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "216", with the same force and effect as if more fully set forth at length herein.

218. Defendant McLean engaged in construction operations, which included the operation of the Tully Truck, in an unsafe manner which created unreasonable risk of harm to

13011943.1

persons and property at the same location where the Subject Aircraft was directed to taxi on June 9, 2009 at JFK International Airport.

219. Defendant McLean's operation of the Tully Truck in an unsafe manner violates the Airport Rules and Regulations including but not limited to Section VII, paragraphs C.6 and C.15 which state in relevant portion:

> 6. No vehicle shall be operated in a manner which creates an unreasonable risk of harm to persons or property . . . or otherwise affects the ability of the driver to safely operate the vehicle...
>
> 15. (a) No person shall park a vehicle or permit a vehicle to remain stopped within the Airport except in such areas and for such periods of time as may be prescribed by the Manager.
> (b) No person shall park or permit a vehicle to remain stopped contrary to authorized signs, pavement markings or other traffic control devices.

220. In addition, Defendant McLean operated the Tully Truck without operating and/or being equipped with a functional beacon light at or around the time of the Accident in violation of Section VI, paragraph C.14 f the Airport Rules and Regulations which states in relevant portion:

> All vehicles operating in these areas [runway, taxiway and safety area] . . . shall have an operating rotation amber light located at the highest structure of the vehicle turned "on" between the hours of sunset and sunrise and during periods of rain, snow, fog, and other conditions.

221. Defendant McLean operated the Tully Truck at the same location on Taxiway Y where the Subject Aircraft was directed to taxi on June 9, 2009 at JFK International Airport.

222. Defendant McLean failed to yield and give right of way to the Subject Aircraft pm on June 9, 2009 at or around 12:30 a.m. in violation of Section VI, paragraph

13011943.1

C.13 f the Airport Rules and Regulations which states in relevant portion that "Vehicles shall yield and give the right of way to all aircraft in motion."

223.    Accordingly, Defendant McLean negligently performed his duties in connection with his performance of his construction operations in the course and scope of his employment with Defendant Tully, which included the operation of the Tully Truck which violated, among other standards and regulations, the Airport Rules and Regulations, all of which resulted in the collision involving the Subject Aircraft on June 9, 2009.

224.    The foregoing acts and omissions of Defendant McLean proximately caused the damages sustained by KAL.

225.    By reason of the foregoing, KAL has been damaged in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with interest and costs.

**WHEREFORE,** KAL demands judgment against the defendants as follows:

a)    On the FIRST CAUSE OF ACTION, damages in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with interest and costs;

b)    On the SECOND CAUSE OF ACTION, damages in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with interest and costs;

- 34 -

13011943.1

c)     On the THIRD CAUSE OF ACTION, damages in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with punitive damages, interest and costs;

d)     On the FOURTH CAUSE OF ACTION, damages in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with interest and costs;

e)     On the FIFTH CAUSE OF ACTION, damages in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with interest and costs;

f)     On the SIXTH CAUSE OF ACTION, damages in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with punitive damages, interest and costs;

g)     On the SEVENTH CAUSE OF ACTION, damages in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with interest and costs;

13011943.1

h)     On the EIGHTH CAUSE OF ACTION, damages in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with interest and costs;

i)     On the NINTH CAUSE OF ACTION, damages in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with punitive damages, interest and costs;

j)     On the TENTH CAUSE OF ACTION, damages in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with interest and costs;

k)     On the ELEVENTH CAUSE OF ACTION, damages in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property and business interruption, together with interest and costs;

l)     On the TWELFTH CAUSE OF ACTION, damages in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with punitive damages, interest and costs;

13011943.1

m)  On the THIRTEENTH CAUSE OF ACTION, damages in an amount to be determined at trial, but in amount not less than $2,719,677.11 for damage to property, diminution in value of the Subject Aircraft and business interruption, together with interest and costs; and

n)  For such further relief as the Court may deem just, equitable and appropriate.

Dated: Jericho, New York
June 1, 2010

Yours, etc.

NIXON PEABODY LLP

By: _____
Raymond Mariani (RM 0277)
Aaron S. Halpern (AH 6100)
*Attorneys for Plaintiff*
*Korean Air Lines Co., Ltd.*
50 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 832-7500

TO:

The Port Authority of New York and New Jersey
225 Park Avenue South
New York, New York 10003

Tully Construction Company, Inc.
127-50 Northern Blvd.
Flushing, New York 11368

Covenant Aviation Security, LLC
270 Remington Blvd., Suite B
Bolingbrook, Illinois 60440

Kamall A. McClean
418 4th Avenue
Mount Vernon, New York 10550

- 37 -

13011943.1